UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on May 21, 2014

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL NO. |
| : | |
| : | Grand Jury Original |
| v. : | |
| : | Violations: |
| : | |
| VERNITA M. GREENFIELD : | |
| Defendant. : | 18 U.S.C. § 201(b)(2)(A)(B)(C) |
| : | (Receipt of a Bribe by a Public Official) |
| : | |
| : | 18 U.S.C. § 2 (Aiding and Abetting and |
| : | Causing an Act to be Done) |
| : | |
| : | Forfeiture: |
| : | 18 U.S.C. § 981(a)(1)(C), |
| : | 28 U.S.C. § 2461(c), 21 U.S.C. § 853(p) |
| : | |

## INDICTMENT

The Grand Jury charges that:

### Introduction

At all times relevant to this Indictment:

1. Defendant VERNITA M. GREENFIELD, a. resident of the District of Columbia, was a Customer Services Representative with the District of Columbia's Department of Public Works, Parking Enforcement Management Administration ("DPW/PEMA"), located in the 1800 block of West Virginia Avenue, N.E., in the District of Columbia.

2. The Department of Public Works provided municipal services in two distinct program areas: environmental services/solid waste management; and parking enforcement. Both contributed to making District streets and public spaces clean, safe, attractive, and

accessible. The DPW/PEMA provided for the removal of abandoned and dangerous vehicles, as well as ticketing, towing, booting, and impoundment of vehicles that were in violation of District of Columbia parking regulations. DPW/PEMA also towed vehicles that posed a danger to the public or impeded the flow of traffic, particularly after vehicle accidents.

3. DPW/PEMA utilized a Computer Aided Dispatch (CAD) system, which enabled DPW/PEMA to communicate with the Metropolitan Police Department in an orderly manner when the Metropolitan Police Department needed vehicles to be towed. Each DPW/PEMA Customer Services Representative was assigned a unique CAD user code and identification number. All transactions that were entered, deleted, or modified in the CAD system were tracked and maintained under a user code and identification number. Defendant VERNITA M. GREENFIELD was assigned a unique user code and identification number.

4. DPW/PEMA did not have enough tow trucks in their fleet to address all of the needs of the District of Columbia. Therefore, DPW/PEMA subcontracted towing services from a list of approximately twenty-two authorized tow truck companies in the District of Columbia to assist DPW/PEMA with vehicle removals. DPW/PEMA required that all Customer Service Representatives rotate among all twenty-two companies' towing assignments to assure that towing services were fairly distributed in an equitable manner. Specifically, DPW/PEMA protocol required that after notifying an authorized towing company of an assignment, the Customer Service Representative was responsible for logging the transaction into the CAD system and noting the specific towing company assigned in a manual log so that the next authorized towing company could be utilized in the rotational listing on the next towing assignment.

5. In order to be included on DPW/PEMA's authorized rotational towing list, a

towing company was required to have all of the following: (1) a license for a locked storage facility; (2) a towing license; and (3) insurance. Both TOWING COMPANY A and TOWING COMPANY B were on DPW/PEMA's rotational list of authorized towing companies.

6. As a Customer Services Representative, defendant VERNITA M. GREENFIELD was responsible for, among other things, providing dispatching services for tow cranes and tow trucks as well as supplemental dispatching services for all types of towing requests to include impounding illegally parked vehicles, removing vehicles causing a safety hazard, emergency tows during snow emergencies, special events, vehicle accidents, and community events. In addition to receiving requests to tow vehicles, defendant VERNITA M. GREENFIELD was also responsible for entering accurate relevant information into the appropriate computer system and dispatching the appropriate government or private towing company on a rotational basis.

7. PERSON A was the owner of TOWING COMPANY A, which was located in the 1800 block of Adams Mill Road, N.W., in the District of Columbia.

8. PERSON B was the owner of TOWING COMPANY B, located in the 1300 block of Kenilworth Avenue, N.E., in the District of Columbia.

## COUNT 1
### (Receipt of a Bribe by a Public Official)

9. The allegations set forth in Paragraphs 1-8 are re-alleged and incorporated by reference as if fully set forth herein.

10. Beginning on or about every Friday afternoon from approximately July 1, 2011, and continuing through on or about May 24, 2013, PERSON A, the owner of TOWING COMPANY A, personally deposited between $200.00 to $500.00 in cash into defendant VERNITA M. GREENFIELD's BB&T checking account ending in XXXX-5580. In return, defendant GREENFIELD utilized her unique user code and identification number on the CAD system, cancelled towing assignments to other towing companies, and re-assigned them to TOWING COMPANY A, thus disregarding the rotational towing assignment system. Thus, TOWING COMPANY A received extra towing assignments to which it was not otherwise entitled.

11. From in or about July 2011, through on or about May 24, 2013, in the District of Columbia and elsewhere, the defendant, VERNITA M. GREENFIELD, being a public official, to wit, a Customer Services Representative with the DPW/PEMA, directly and indirectly, corruptly demanded, sought, received, accepted, and agreed to receive and accept things of value personally, to wit, approximately thirty-five-thousand-three-hundred dollars ($35,300.00) in cash from PERSON A, the owner of TOWING COMPANY A, in return for defendant GREENFIELD being influenced in the performance of an official act and being induced to do an act in violation of defendant GREENFIELD's official duties, to wit, steering towing assignments to TOWING COMPANY A and disregarding the rotational towing assignment system.

**(Receipt of a Bribe by a Public Official, and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 201(b)(2)(A)(B)(C) and 2)**

## COUNT 2
### (Receipt of a Bribe by a Public Official)

12. The allegations set forth in Paragraphs 1-8 are re-alleged and incorporated by reference as if fully set forth herein.

13. Beginning on or about November 30, 2009, through on or about December 7, 2012, PERSON B, the owner of TOWING COMPANY B, gave checks from its business bank account to defendant VERNITA M. GREENFIELD, ranging between $100.00 to $1000.00, which were then deposited into defendant GREENFIELD's BB&T checking account ending in XXXX-5580. In return, defendant GREENFIELD utilized her unique user code and identification number on the CAD system, cancelled towing assignments to other towing companies, and re-assigned them to TOWING COMPANY B, thus disregarding the rotational towing assignment system. Thus, TOWING COMPANY B received extra towing assignments for which it was not otherwise entitled.

14. From in or about November 2009, through on or about December 7, 2012, in the District of Columbia and elsewhere, the defendant, VERNITA M. GREENFIELD, being a public official, to wit, a Customer Services Representative with the DPW/PEMA, directly and indirectly, corruptly demanded, sought, received, accepted, and agreed to receive and accept things of value personally, to wit, approximately five-thousand-eight-hundred-seventy-five dollars ($5,875.00) in cash from defendant PERSON B, the owner of TOWING COMPANY B, in return for defendant GREENFIELD being influenced in the performance of an official act and being induced to do an act in violation of defendant GREENFIELD's official duties, to wit, steering

5

towing assignments to TOWING COMPANY B and disregarding the rotational towing assignment system.

**(Receipt of a Bribe by a Public Official, and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 201(b)(2)(A)(B)(C) and 2)**

## FORFEITURE ALLEGATION

1.  Upon conviction of any of the offenses alleged in Counts One and Two of the Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The United States will also seek a forfeiture money judgment against the defendant equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses.

2.  If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

A TRUE BILL

FOREPERSON

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA